IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRENT GILMORE, GARY LIVINGSTON, WILLIAM J. OTTS, AND RICHARD PESCHAU,<br><br>Plaintiffs,<br><br>v.<br><br>WOODMEN ACCIDENT & LIFE COMPANY a Nebraska Insurance Corporation, THOMAS D. POTTER, JOHN HAESSLER, MARK H. BALE, MARGIN P. EHLY, KRISTA FRANK, SUSIE KEISLER-MUNRO, KEITH PRETTYMAN, and FREDERICK R. RICKERS, ASSURITY LIFE INSURANCE,<br><br>Defendants. | 8:03CV305<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the defendants' motion for summary judgment on the plaintiffs' remaining claims for misrepresentation/concealment in connection with the termination of certain contracts. Filing No. 180. Plaintiffs, former general agents of defendant Assurity Life Insurance Company's predecessor in interest, Woodmen Accident and Life Co. (collectively, "Woodmen"), filed this action alleging misrepresentation, breach of contract, estoppel, tortious interference with business relationships and violations of the Nebraska Wage Payment and Collections Act, Neb. Rev. Stat. § 48-1231 ("Wage Act"), in connection with defendants' termination of Mentoring General Agent agreements.

**I. Posture of the case**

By previous order, this court granted defendants' motion for summary judgment on plaintiffs' claims for breach of employment contract, promissory estoppel, tortious

interference with a business relationship, and violations of the Wage Act.  Filing No. 147, Mem. and Order at 15 (D. Neb. Feb. 14, 2005).  The plaintiffs' remaining claim is a claim for misrepresentation/concealment.  See Filing No. 161, Order on Pretrial Conference ("PTO") at 4-5; Filing No. 147, Mem. & Order at 15 n.7.  The action was set for trial on May 18, 2005.  Filing No. 161, Pretrial Order at 17.  Both parties had filed motions in limine that were pending on the eve of trial.[1]  Filing Nos. 119, 129, 142, 152, 155 & 166.

The court ruled on those motions shortly before the trial was to commence.  *See* Filing No. 174.  The court's ruling prompted plaintiffs to file motions to reopen the pretrial order and for miscellaneous relief.  Filing Nos. 175 & 176.  After a hearing, the court granted the motions to allow the defendants to file a motion for summary judgment on plaintiffs' remaining claims.  Filing Nos. 178 & 179.  The heart of the controversy is whether or not the court will allow evidence with respect to damages after the plaintiffs' termination. If evidence of post-termination damages were not allowed, plaintiffs concede that they would be unable to prove a prima facie case at trial.  *See* Filing No. 179, Hearing Transcript at 29.  In this manner, the plaintiffs sought to preserve their rights to a jury trial, while seeking review of the court's earlier grant of summary judgment and of its refusal to admit post-termination evidence.  *Id.* at 23-25.

The misrepresentation/concealment claim involves allegations that the defendants induced the plaintiffs to sign the Mentoring General Agents (MGA) contracts with certain promises of longevity, permanency, advantageous compensation, and health and pension

---

[1] Plaintiffs sought preclusion of certain evidence as irrelevant and also raised a *Daubert* objection to defendants' expert witness, Ronald Butkiewicz.  Filing Nos. 119, 129 & 152.  Defendants moved to preclude the plaintiffs' expert, Fred Lockwood, from testifying with respect to any damages following the termination of the plaintiffs' MGA contracts in July 2002, and to preclude purported rebuttal expert testimony by plaintiffs and Mike Fardella.  Filing Nos. 134 & 155.

benefits, and repeatedly assured them that their positions as career agents were secure. Plaintiffs further allege that defendants made these representations knowing they were not true because defendants planned at the time to implement a brokerage system, which would be incompatible with the Mentoring General Agent agreements. Plaintiffs allege that the defendants further represented that Woodmen's pension plan was stable, knowing that it was underfunded.[2] Plaintiffs argue that the misrepresentation/concealment claim involves more than the promises of employment covered in the Mentoring General Agent contracts. They contend the claim revolves around the defendants' decision to end the entire Mentoring General Agent program and not merely the decision to terminate the employment of these plaintiffs. Defendants, on the other hand, argue that the plaintiffs' assertion of the misrepresentation/concealment claims is an attempt to recover contract damages by arguing fraud. Defendants assert that plaintiffs have no evidence of damages extraneous to the contract damages, and thus contend plaintiffs' fraud claim fails as a matter of law.

## II. Discussion

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

---

[2] Specifically, the parties agree that the issues that remain to be resolved are: whether defendants misrepresented and concealed certain facts to plaintiffs; whether the misrepresentations were false and material; whether plaintiffs were induced to rely, to their detriment, on the representations; whether plaintiffs suffered damages and the nature and extent of those damages. See Filing No. 161, Pretrial Order at 4-5. Other controverted issues are whether the representations were made fraudulently and with intent to deceive the plaintiffs, whether each plaintiff entered into another and later agreement that supercedes the former agreement, whether the MGA agreements were fully integrated written documents that purported to express all relevant terms by and between the parties, whether the plaintiffs have taken reasonable steps to minimize any alleged damages and whether the complaint states a claim against individual defendants. *Id.*

as a matter of law.  Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).  Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.  *Id.*  The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

In order to prove fraud or misrepresentation under Nebraska law, plaintiffs must prove:  (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that the plaintiff should rely upon it; (5) that the plaintiff did so rely; and (6) that he or she suffered damage as a result.  *Freeman v. Hoffman-La Roche, Inc.*, 618 N.W.2d 827, 844-45 (Neb. 2000).  False representations must be the proximate cause of the damage before a party may recover.  *Huffman v. Poore*, 569 N.W.2d 549, 560 (Neb. Ct. App. 1997).

Liability for negligent misrepresentation is based upon the failure of the actor to exercise reasonable care or competence in supplying correct information.  *Gibb v. Citicorp Mortgage, Inc.,* 518 N.W.2d 910, 920 (1994) (adopting Restatement (Second) Torts § 552 to specifically enumerate the elements of a negligent misrepresentation claim).  The Restatement (Second) of Torts § 552 provides:  "One who . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information. . . ."  Restatement (Second) Torts § 552 at 126 (1977).  In addition, one of the elements of a cause of action for negligent misrepresentation is justifiable reliance on the part of the plaintiff. *Washington Mut. Bank, FA v. Advanced Clearing, Inc.*, 679 N.W.2d 207, 210 (Neb. 2004).

Whether a party's reliance upon a misrepresentation was reasonable is a question of fact. *Nebraska Nutrients, Inc. v. Shepherd,* 626 N.W.2d 472, 496 (Neb. 2001).

The elements of a fraudulent concealment claim are that: (1) the defendant had a duty to disclose a material fact; (2) the defendant, with knowledge of the material fact, concealed the fact; (3) the material fact was not within the plaintiff's reasonably diligent attention, observation, and judgment; (4) the defendant concealed the fact with the intention that the plaintiff act in response to the concealment or suppression; (5) the plaintiff, reasonably relying on the fact or facts as the plaintiff believed them to be as the result of the concealment, acted or withheld action; and (6) the plaintiff was damaged by the plaintiff's action or inaction in response to the concealment. *Streeks, Inc. v. Diamond Hill Farms, Inc.*, 605 N.W.2d 110, 118 (Neb. 2000). The circumstances of each case typically determine whether a duty to disclose exists. *Id.* (noting that Restatement (Second) Torts § 551 properly sets out when such a duty may arise).[3] A duty to disclose

---

[3]The Restatement provides:

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question;

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

  (a)  matters known to him that the other is entitled to know
  (b)  matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
  (c)  subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
  (d)  the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
  (e)  facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

5

may arise among parties to a business transaction, although the existence of a contract is not necessary to create such a duty. *Id.* at 119-20. The question of whether a legal duty exists is a question of law dependent on the facts in a particular situation, but the breach of that duty is a question of fact for the jury. *Id.* at 120.

Nebraska does not restrict contracting parties to breach of contract actions—fraud and deceit provide a ground of recovery that is independent of contract. *Oriental Trading Co. v. Firetti*, 236 F.3d 938 (8th Cir. 2001). "In an action for fraud a party may recover such damages as will compensate him or her for the loss or injury actually caused by the fraud and place the defrauded party in the same position as he would have been in had the fraud not occurred." *Streeks, Inc.,* 605 N.W.2d at 122 (noting that benefit of the bargain is not always an appropriate measure of damages, although it can be in an action based on a fraudulently-induced contract).

The court's review of the materials in support of and against the defendants' motion will require the court to clarify its earlier summary judgment order and to reconsider its ruling on the motions in limine. Upon closer review of the pleadings and evidence, the court finds that the agreement between the parrties is comprised of two components: an employment contract and an independent contractor/agency relationship agreement. To the extent that employment rights and responsibilities are involved, the contract provides for terminable-at-will employment. The breach of contract claim has been dismissed. The parties' agreement to create an independent contractor or agency relationship based on defendants' Mentoring General Agent program is implicated with respect to the plaintiffs' misrepresentation/concealment claims. The plaintiffs' misrepresentation/concealment

---

*See Streeks*, 605 N.W.2d at 118.

claim involves alleged promises and reliance thereon that are separate and distinct from those that comprise the employment contracts. The agency relationship between the parties creates duties and obligations different than those created in the employment contracts. Plaintiffs' allegations of misrepresentation and concealment are more than mere allegations of fraud in the inducement to enter a terminable-at-will employment contract, in which the damage recovery for wages is generally limited to those recoverable under the terms of the contract.

Accordingly, the court's dismissal of the breach-of-employment-contract claim should not serve to limit or exclude evidence that may be relevant to the misrepresentation/concealment claim. Plaintiffs' allegations and evidence of misrepresentation/concealment relate to defendants' elimination of its MGA program, not to the termination of each plaintiff's job. Since the duties and obligations in the tort action are separate from the employment contract, plaintiffs' damages are not limited by the employment contract.

In view of the changed posture of the case, the court will enter an order, nunc pro tunc, withdrawing its prior rulings on the parties' motions in limine.[4] Plaintiffs will be permitted to adduce evidence of damages necessary to restore them to the position they would have been in absent the alleged misrepresentation/concealment, subject to a proper

---

[4]The law of the case doctrine generally provides that a court's decision on legal issues should govern the same issues in later stages of the same case, but the doctrine applies only to issues decided by final judgments. *Lovett v. General Motors Corp.*, 975 F.2d 518, 522 (8th Cir. 1992). A district court's rulings on motions for summary judgment and other pretrial motions are not final judgments. *See id.* Further, a district court may properly depart from an earlier holding "if convinced that it is clearly erroneous and would work a manifest injustice." *Id.* (noting that "[w]hen a district court is convinced that it incorrectly decided a legal question in an interlocutory ruling, the district court may correct the decision to avoid later reversal").

showing of foundation and relevance.  The motions in limine will be deemed refiled this date and the court will rule on the motions by separate order.

Accordingly, the court finds that defendants' motion for summary judgment in its favor on plaintiffs' remaining misrepresentation/concealment claims should be denied.

IT IS ORDERED:

1. Defendants' motion for summary judgment on plaintiffs' misrepresentation/concealment claims (Filing No. 180) is denied.

2.  This court's order (Filing No. 174) on the parties' motions in limine is withdrawn.

3.  The motions in limine (Filing Nos. 119, 129, 134, 142, 152, 155, and 166) are deemed refiled on this date; the court will enter a separate order on the motions.

4.  Trial of this action will be rescheduled.  A scheduling conference is set for **April 12, 2006, at 9:00 a.m.,** Courtroom 3 (Omaha).

DATED this 31st day of March, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge